UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK, LLC; ECHOSTAR TECHNOLOGIES, LLC; and NAGRASTAR, LLC,<br><br>           Plaintiffs,<br><br>   v.<br><br>CLAYTON HOGGARD,<br><br>           Defendant. | Case No.: 1:14-cv-00331 - AWI - JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 8) |

      DISH Network LLC; EchoStar Technologies, LLC; and NagraStar, LLC ("Plaintiffs" or "DISH Network") seek the entry of default judgment against Clayton Hoggard ("Defendant"). (Doc. 8.) Defendant has not opposed this motion. Having reviewed the motion and supporting documents, the Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g). Therefore, the matter was taken under submission on May 20, 2014. (Doc. 9.) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED**.

**I.    Procedural History**

      Plaintiffs allege, "DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system." (Doc. 1 at 2, ¶ 9.) According to Plaintiffs, "[t]he works broadcast by DISH Network are copyrighted," and "DISH Network contracts

for and purchases the distribution rights" for its programs.  (*Id.* at 3, ¶¶ 11-12.)  Plaintiffs allege Defendant decrypted its transmissions, and received "DISH Network's satellite broadcasts of copyrighted television programming without payment of the required subscription fee."  (*Id.* at 2, ¶ 8.)  Accordingly, Plaintiffs filed their complaint against Defendant on March 10, 2014, alleging violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1); the Federal Communications Act, 47 U.S.C. § 605(a); and the Electronic Communications Privacy Act, 18 U.S.C. §§2511(1)(a) and 2520.  (*Id.* at 6-7.)

Defendant was served with the complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, default was entered against Defendant pursuant to Fed. R. Civ. P. 55(a) on April 10, 2014.  (Docs. 6, 7.)  Plaintiffs filed the motion for default judgment now pending before the Court on April 24, 2014.  (Doc. 8.)

## II.     Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment.  When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment.  Fed. R. Civ. P. 55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven.  *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money

at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  *Id.* at 1472.

### III. Plaintiff's Factual Allegations

Plaintiffs assert that "DISH Network uses high-powered satellites to broadcast . . . movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event[,] the purchase price."  (Doc. 1 at 3, ¶ 10.)  According to Plaintiffs, the programs DISH Network broadcasts are copyrighted, and "DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights." (*Id.* at 3, ¶¶ 11-12.)

Plaintiffs allege that the "programming is digitized, compressed, and scrambled prior to being transmitted."  (Doc. 1 at 3, ¶ 13.)  Through the NagraStar system, DISH Network is able "to 'turn on' and 'turn off' programming a customer has ordered, cancelled, or changed."  (*Id.*, ¶ 16.)  In addition, NagraStar control words "descramble DISH Network's satellite signal, which … prevents unauthorized decryption of DISH Network."  (*Id.* at 4, ¶ 16.)  Plaintiffs explain the transmission as follows:

> The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the NagraStar entitlement control message and forwards it to the smart card. Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word. The control word is then transmitted back to the receiver to decrypt the DISH Network satellite signal.
>
> Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH Network subscriber.

(Doc. 1 at 4, ¶¶ 17-18.)  Plaintiffs allege that Defendant circumvented the system, and he received transmissions of "DISH Network's satellite broadcasts of copyrighted television programming without payment of the required subscription fee."  (*Id.* at 2, ¶ 8.)

According to Plaintiffs, this was accomplished by Defendant "subscribing to two pirate

3

television services known as IKS Rocket and Nfusion Private Server ('NFPS')." (Doc. 1 at 2, ¶ 8.) Plaintiffs assert that Defendant purchased a subscription to IKS Rocket from Thomas Dixon, whose records show Defendant subscribed to IKS Rocket on or about January 11, 2012. (*Id.* at 5, ¶ 26.) In addition, Plaintiffs allege Defendant "subscribe[d] to NFPS in or around February 2013." (*Id.*) Plaintiffs explain: "Through IKS Rocket and NFPS, Defendant illegally obtained DISH Network's control words or 'keys,' which he then used to decrypt DISH Network's satellite signal and view DISH Network programming without authorization." (*Id.*, ¶¶8, 27.)

For these acts, Plaintiffs alleged violations of 17 U.S.C. § 1201(a)(1), 47 U.S.C. § 605(a), and 18 U.S.C. §§ 2511(1)(a) and 2520. However, in the motion for default judgment, Plaintiffs request damages only for the violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520(a). (*See* Doc. 8-1.) Therefore, the Court will address only this claim.

**IV.     Application of *Eitel* Factors**

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

A.     Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods.*, 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiffs would be prejudiced if default judgment is not granted.

B.     Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of the factors, the Court considers the merits of Plaintiffs' substantive claims and the sufficiency of the complaint together. *See Premier Pool Mgmt. Corp. v. Lusk*, 2012 U.S. Dist. LEXIS 63350, at *13 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citation omitted). Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir.2007).

The Electronic Communications Privacy Act ("ECPA") prohibits "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept, or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Although § 2511 is a criminal provision, 18 U.S.C. § 2520(a) provides "a private cause of action for violation of Section 2511(1)(a)." *EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F.Supp.2d 1201, 1208 (S.D. Cal. 2008). Specifically, pursuant to § 2520(a) states: "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity. . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). The Ninth Circuit has determined that "electronic communications" include satellite television signals. *DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir.2008) (citing *United States v. Lande*, 968 F.2d 907, 913 (9th Cir.1992) (acknowledging that § 2511(1)(a) prohibits "the unauthorized viewing of satellite pay television")). Thus, to state claim under § 2520(a), a plaintiff must allege facts sufficient to establish that the defendant intentionally intercepted the plaintiff's satellite television programming without proper authorization. *See id.*; 18 U.S.C. §§ 2511(1)(a), 2520(a).

Here, Plaintiffs assert they obtained the distribution rights for the programing on DISH Network, and the "programming is digitized, compressed, and scrambled prior to being transmitted." (Doc. 1 at 3, ¶¶11-13.) Plaintiffs allege that Defendant intercepted DISH Network satellite television programming unlawfully, through subscriptions to NFPS and IKS Rocket, which were accessed using an unauthorized receiver. (*Id.*, ¶¶ 8, 27.) Consequently, Plaintiffs have adequately set forth a claim under 18 U.S.C. § 2520(a) for a violation of § 2511.

### C.     Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages for Defendant's conduct in the amount of $10,000. (Doc. 8-1 at 4-5). Pursuant to 18 U.S.C .§ 2520(c)(2)(B), the Court may award "statutory damages of whichever is the greater of $100 a day for each day of violation *or* $10,000." 18 U.S.C. § 2520(c)(2) (emphasis added). Because the statute authorizes an award of $10,000 – or more – the amount requested relates directly to the Defendant's conduct and does not weigh against Plaintiff's motion for default judgment.

### D. Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Here, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant has failed to defend the case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. In this case, Defendant was served with the Summons and Complaint, as well as the motion for default judgment. (*See* Doc. 8-7.) Given these facts, it is unlikely that Defendant's actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment.

## V. Damages

Having accepted the well-pleaded allegations as true, Plaintiffs established the elements of a violation of the ECPA. Therefore, Plaintiffs are entitled to damages for Defendant's intentional interception of the satellite programing. As noted above, the Court may award "statutory damages of whichever is the greater of $100 a day for each day of violation *or* $10,000." 18 U.S.C. § 2520(c)(2) (emphasis added). The Court has the discretion to award either the statutory sum or no damages at all,

but may not elect an award somewhere between the two. *DIRECTV, Inc. v. Grifin,* 290 F.Supp.2d 1340, 1347–48 n. 28 (M.D. Fla. 2003) ( "Although a district court has the discretion to award the full amount of statutory damages authorized under § 2520(c)(2) or none at all, Congress did not grant district courts authority to prescribe an amount falling between those two choices"). In other words, where the plaintiff elects to receive statutory damages but presents no evidence of the number of days violations occurred, the only choice for the court is whether to award $10,000 in damages, or no damages at all. *See DIRECTV, Inc. v. Walsh,* 540 F.Supp.2d 553, 561 (M.D. Pa. 2008) (explaining the court is faced with the question "whether to award no damages or $10,000"); *DIRECTV, Inc. v. Hedger,* 322 F.Supp.2d 879, 882 (W.D. Mich.2004) ("the Court may exercise its discretion to either award [the plaintiff] $10,000 or to award no damages at all").

Here, Plaintiffs alleged Defendant purchased the IKS Rocket subscription in January 2012 and acknowledged in an online forum that he was still using the subscription 11 months later. (*See* Doc. 8-1 at 9.) Plaintiffs observe that Defendant probably continued the use "even longer based on [a] post [i]n February 2013 stating NFPS and 'another' service recently 'worked great.'" (*Id.*, citing Rogers Decl. ¶ 7, Exh.5.) Nevertheless, Plaintiffs acknowledge that "[t]he exact period of time Defendant used NFPS and IKS Rocket to steal DISH Network programming cannot be determined from the evidence available." (*Id.* at 8.) Because the precise number of days on which violations occurred is unknown—although it may be inferred Defendant intentionally intercepted programs for more than a year—the Court finds the damage request of $10,000 to be appropriate, and recommends it be awarded.

## VI.     Injunctive Relief

The ECPA authorizes injunctive relief, permitting the Court to grant "preliminary and other equitable or declaratory relief as may be appropriate." 18 U.S.C. § 2520(b)(1). Plaintiffs seek a permanent injunction to prevent Defendant from further violations of Plaintiffs' rights under the ECPA. (Dco. 1 at 8; Doc. 8-1 at 10-14.) Specifically, Plaintiffs request an injunction that "enjoins Defendant, and anyone acting in concert or participation with Defendant, from" (1) "circumventing or assisting others in circumventing DISH Network's security system, or intercepting or assisting others in intercepting DISH Network's satellite signal;" and (2) "testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite

receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system." (Doc. 8-1 at 14.)

Injunctive relief is appropriate when a party establishes "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (explaining that, in general, "a permanent injunction will be granted when liability has been established and there is a threat of continuing violations").

In this action, as discussed above, Plaintiffs have established Defendant's liability for violations of the ECPA. Further, the facts demonstrate Defendant's violations were despite his knowledge that he lacked authorization to access DISH Network programming, and required the use of pirated subscription services. Damages alone appear inadequate to prevent future piracy by Defendant, who would be enjoined from engaging in further criminal activity. Further, "the public has an interest in the enforcement of … statutes" such as the ECPA. *See Coxcom, Inc. v. Chafee*, 536 F.3d 101, 112 (1st Cir. 2008). Therefore, injunctive relief is appropriate to prevent Defendant from intercepting DISH Network programming in the future, and from assisting others in similar endeavors.

**VII.   Findings and Recommendations**

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Further, the damages requested are reasonable, and it appears a permanent injunction is appropriate to prevent further violations of the ECPA by Defendant. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiffs' motion for default judgment (Doc. 8) be **GRANTED**:
2. Damages for Plaintiff's violations of the ECPA be **AWARDED** in the amount of $10,000;
3. Plaintiffs' request for permanent injunctive relief be **GRANTED**; and
4. Defendant be enjoined from (1) circumventing or assisting others in circumventing DISH Network's security system, or intercepting or assisting others in intercepting

DISH Network's satellite signal and (2) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 27, 2014**              **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE